[No. 4216. Decided July 26, 1902.]

CARRIE S. B. RECKERS, *Appellant,* v. ALICE A. ALLMOND *et al, Respondents.*

FRAUDULENT CONVEYANCES — SUFFICIENCY OF EVIDENCE.

A *prima facie* case of fraud by reason of the conveyance of all of a debtor's property pending proceedings to revive a judg-

ment lien against the same is not established, where the evidence shows the property was worth about $16,000, that it was incumbered by mortgages and taxes to the extent of $12,448, and that the debtor received only $1,000 for her equity, when it also appears that the debtor had tried without avail to either sell the property or borrow more money on it; that the mortgages were long past due and the taxes for several years and street assessments against the property delinquent, and that the holder of one of the mortgages was threatening immediate foreclosure; and the fact that the conveyance was made to a man who had at one time acted as the debtor's attorney, but who had resided for four years in another state, in ignorance of the real situation, except as disclosed in letters of a friend advising the purchase, which letters had been destroyed because containing personal and private matters as well as business matters, would not constitute a badge of fraud, although the vendee or his agent had knowledge of the proceedings for the revival of the judgment lien.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge. Affirmed.

*Benson & Aust,* for appellant.

*Munday & Fulton* and *Struve, Allen, Hughes & McMicken,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—This action was brought by appellant as judgment creditor of defendants Alice A. Allmond and Charles H. Allmond, to have a transfer of certain property in the city of Seattle, made by defendants Allmond and wife to defendant Bass, declared fraudulent, and it is prayed that defendant Bass be declared a trustee holding the property subject to a judgment in behalf of appellant. The facts are undisputed, and are substantially as follows: On December 22, 1894, appellant obtained a judgment in the superior court of King county against Allmond and wife for $2,857.21. A part of this amount was subsequently paid. On the 12th day of December,

1900, the plaintiff filed a motion in the superior court of King county to revive the lien of the judgment, and on the 2d day of February, 1901, a judgment was rendered, reviving the former judgment, in the sum of $1,-260.73. Executions were issued upon the revived judgment and returned *nulla bona*. At the date of the original judgment, defendant Alice A. Allmond owned the property described in the complaint. Neither of defendants Allmond has since owned any other property. After the judgment of December 22, 1894, had ceased to be a lien on the property in question, and a short time before the rendition of the judgment of revival, the defendants Allmond and wife transferred all of their property to defendant Bass in consideration of $1,000. The property, at the time of this transfer, was of about the value of $16,-000, but at that time there were two mortgages upon the property, long past due, and also delinquent taxes for several years, and street grade assessments, making the total liens against the property amount to about $12,448. The holder of one of these mortgages was pressing for payment, and threatening foreclosure. Mrs. Allmond had vainly endeavored to borrow money upon the property, so as to pay the liens. She had also offered a part thereof for sale, but was unable to find a purchaser. In the latter part of December, 1900, while the motion to revive the judgment was pending, one Charles E. Patton learned that a part of the property was offered for sale, and thereupon entered into negotiations with Mrs. Allmond looking to the purchase of the whole of the property. After inquiring into the condition of the title and the liens against the property, and learning that a deduction of a part of the interest due on one of the mortgages would be made, provided the mortgage was immediately paid, Patton offered Mrs. Allmond $1,000 for her equity therein. Mrs.

Allmond accepted the offer, and gave Mr. Patton ten days in which to correspond with defendant Bass, who was at that time living in San Francisco, California. Mr. Bass, it appears, was an intimate friend of Mr. Patton, having been such for a period of about twelve years. Mr. Patton was willing to advance the $1,000 necessary for Mr. Bass to purchase the equity. He was also willing to advance the money to protect the property against the mortgages and liens, and to rely upon deductions of interest for his profit, and agreed that Mr. Bass should have the benefit of the increase of the value of the property, and whatever profit might accrue from a sale after payment of the mortgages and liens. Before the expiration of the ten days, an agent who had been employed to sell a part of the property for Mrs. Allmond procured a purchaser who was willing to pay $6,500, the price at which she had theretofore agreed to sell, which price was some $400 more than the mortgage upon this part. This offer was refused by Mrs. Allmond because she had already orally agreed with Mr. Patton to sell the whole to him. Upon hearing from Mr. Bass, Mr. Patton purchased the property, paid the $1,000 to Mrs. Allmond, and took a deed in favor of Mr. Bass. At about that time, Patton paid one of the mortgages, and took an assignment thereof to himself. He afterwards paid certain taxes and street assessments. Mr. Bass gave Patton a note for the $1,000, payable on demand, with interest at eight per cent., and also gave to Mr. Patton a power of attorney authorizing him to handle the property. Mr. Patton had met Mrs. Allmond but once or twice previous to these transactions, and was not otherwise acquainted with her. Mr. Bass, some four or five years previously, had been attorney for Mrs. Allmond in an attempt at foreclosure of one of the mortgages, and had transacted some small business matters for her. He knew nothing about

16—29 Wash.

this transaction except through Mr. Patton, and went into it solely upon the recommendation of Mr. Patton. This information was conveyed by letters, but the letters passing between them had been destroyed, and were therefore not put in evidence. The destruction of these letters was accounted for by reason of the extremely friendly relations between Mr. Bass, and Mr. Patton, personal letters having passed back and forth between them as often as once a week. In these letters, business and society gossip were intermingled, and each destroyed the other's letters soon after receipt. The witnesses Bass, Patton, and Mrs. Allmond, who were called by the plaintiff, testified that the sale was absolute, and that there was no agreement by which Mrs. Allmond was to receive any further benefit from the property. This evidence was not disputed. The lower court, after hearing all the evidence offered by the plaintiff, upon motion of defendants dismissed the case.

The only question presented here is as to the sufficiency of the evidence to make a *prima facie* case of fraud. It is not claimed that there is any direct proof of fraud, but it is claimed that the circumstances surrounding the transaction are sufficient to make a *prima facie* case. It is claimed that the vendee is vendor's attorney; that the vendee paid nothing; that the vendor sold all her property; that the consideration was grossly inadequate; that the sale was made pending a suit against the vendor of which the vendee had knowledge; that the vendee and his agent destroyed letters passing between them; that vendor sold all her property when she had previously offered only a part for sale; and that the vendor, after agreeing to sell all, was offered her price for a part of the property. After carefully examining the evidence, we are satisfied that, even if there is testimony in the case to warrant any of these charges, it is fully explained away by the plaintiff's

evidence. It appears that Mr. Bass, who is an attorney at law by profession, was at one time employed by the vendor, but it also appears that at the time of the transaction in question he had been away from Seattle, and in San Francisco, California, for about four years, and knew nothing of the matter at all personally, except that he consented to purchase upon the recommendation and very favorable terms offered by Mr. Patton. It also appears that at that time Mr. Bass was not, and for several years had not been, attorney for the vendor. The evidence also shows that Mr. Bass paid no money at the time of the purchase, but it shows that he gave Mr. Patton his note for $1,000, and Patton paid the money, and holds the note. There is no dispute that the Allmonds sold all their property. It also clearly appears that they tried to borrow money upon all of it; that they tried to sell a part so as to pay off pressing claims, but were unsuccessful; and this sale, at the time it was made, was the only opportunity they had to realize anything from the property over the incumbrances. Mr. Patton estimated the value of the property at $14,500, and that the mortgage liens and tax liens against it amounted to $12,448, leaving its net value approximately $2,000, for which he recommended Mr. Bass to pay $1,000. The highest value placed upon the property by any witness was $18,100. If it be conceded that the total value of the property was $18,100, and that there were overdue mortgages and delinquent tax liens against it amounting to $12,448, the holder of one of the mortgages, amounting to about $6,500, threatening foreclosure and costs, and the owners, after diligent efforts, were not able to meet these obligations, and realized that the property must be sold at some sacrifice or the whole lost, it seems that under these circumstances, if the owners sold their equity in the property for $1,000 cash, no badge of fraud is to be found

therein because the consideration is inadequate. It is true this would leave a large margin for profit to one able to pay off the incumbrances, but to persons in the condition of the Allmonds it would not be a good investment, and good judgment dictated a sale at that price. These circumstances certainly explained away any imputation of fraud on the part of either vendor or vendee. It appears that the sale was made pending a motion to revive the lien of the judgment, and a few days prior to the entry of the judgment. Under the circumstances this can not be considered proof of fraud. The judgment had existed for six years previously, had been a lien upon this same property, and the lien had been allowed to expire. The right of the holder of the lien to enforce the same against the property had not previously been exercised, probably because of the small margin of value of the property over the mortgage and other liens. Must the judgment debtor now take notice that the judgment creditor will seize the property under a new lien, when he had refused to do so under the old? Whatever indication of fraud there may be in one selling property before a judgment is rendered is much weakened where the lien is allowed to expire, and sale is made while revival proceedings are pending. It is true that the vendee or his agent knew of the motion to revive the judgment before he purchased. He also knew, and was advised by able counsel, that the lien had expired, and at the time of the purchase was not a lien upon the property. The fact that Mr. Patton and Mr. Bass destroyed the letters passing between them was also fully and reasonably explained.

We are satisfied that the lower court was right. The judgment is affirmed.

REAVIS, C. J., and HADLEY, FULLERTON, WHITE, ANDERS and DUNBAR, JJ., concur.